

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLVOICE COMPUTING PLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-02-4471 |
| | § | |
| NUANCE COMMUNICATIONS, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Pending before the Court are the parties' cross-motions for summary judgment. After considering the parties' filings and the applicable law, the Court finds that Plaintiff's motion, Docket No. 214, should be and hereby is **DENIED**, and that Defendant's motion, Docket No. 216, should be and hereby is **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

I.  BACKGROUND

This is a patent infringement case involving speech recognition software. Plaintiff, a company organized under the laws of the United Kingdom, alleges that Defendant has infringed U.S. Patent No. 5,799,273 (the '273 patent), which teaches a software invention that is used to translate dictated words into text within a word processing program. The software records each spoken word and permits a user to play back the recording of a particular word by selecting that word in the text.[1]

In 1995, before filing the patent application, Plaintiff's inventors devised a method for enabling the software to maintain accurate link information between the text and the audio recordings even when the positions of words in the text are changed

---

[1] The playback feature permits the correction of recognition errors.

manually through use of a keyboard or mouse. This maintenance is accomplished through the use of a macro, a program that obtains information about the status of a word processing application, such as the current position of the cursor within a document. Plaintiff's macro is known as the "Selrange macro." When a key is struck, the Selrange macro detects the action; determines whether the key is one that will result in the addition, deletion, or movement of a character in the text; and, if so, ascertains the cursor position in order to record where in the text the character shift has occurred. Because the macro cannot update the link information accurately when a user changes text through the use of certain word processing techniques – for example, "drag-and-drop" text editing, in which a user moves selected text using the mouse – Plaintiff's software temporarily alters the word processing program by disabling these techniques.

## II.   APPLICABLE LAW

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.*

### B.     The Best Mode Defense

The "best mode" requirement is imposed by 35 U.S.C. § 112 ¶ 1, which provides that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, *and shall set forth the best mode contemplated by the inventor of carrying out his invention.*

35 U.S.C. § 112 ¶ 1 (emphasis added). Failure to comply with the best mode requirement renders a patent invalid. *See, e.g., Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1531 (Fed. Cir. 1991). The best mode requirement is intended to prevent inventors from obtaining patent protection while concealing from the public the best methods of implementing their inventions. *See Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 926 (Fed. Cir. 1990). The party asserting the best mode defense bears the burden of proving the defense by clear and convincing evidence. *See Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1344 (Fed. Cir. 2000) (burden of proof); *Engel*, 946 F.2d at 1531 (evidentiary standard).

> In evaluating a best mode challenge, the Court engages in a two-part inquiry:
>
> Compliance with the best mode requirement is a question of fact . . ., which is composed of two best mode inquiries. The first inquiry is whether, at the time of filing the patent application, the inventor considered a particular mode of practicing his invention superior to all other modes. This inquiry is wholly subjective; that is, it focuses on the inventor's state of mind at the time he filed his patent application. . . . The second inquiry is whether the inventor's disclosure is adequate to enable one of ordinary skill in the art to practice the best mode of the invention.

> This inquiry is objective and depends upon the scope of the claimed invention and the level of skill in the relevant art.

*N. Telecom Ltd. v. Samsung Elec. Co.*, 215 F.3d 1281, 1286 (Fed. Cir. 2000). Simply put, a party asserting the best mode defense must show that "(1) the inventors knew of a better mode of carrying out the claimed invention than they disclosed in the specification, and (2) the inventors concealed that better mode." *Engel*, 946 F.2d at 1531. Concealment need not be intentional; rather, "[a] best mode violation may occur if the disclosure of the best mode is so objectively inadequate as to *effectively* conceal the best mode from the public." *United States Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1215 (Fed. Cir. 1996) (emphasis in original).

The best mode is defined by the scope of the claimed invention. *See Engel*, 946 F.2d at 1531 ("The best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims."). The Federal Circuit has held, however, that the best mode requirement may mandate the disclosure of information about elements of the invention that do not appear in specific claim limitations:

> Chemcast first argues that, because the '879 patent does not claim any specific material for making the locking portion of the grommet, [the inventor's] failure to disclose the particular material that he thought worked the best does not violate the best mode requirement. This argument confuses best mode and enablement. A patent applicant must disclose the *best* mode of carrying out his claimed invention, not merely *a* mode of making and using what is claimed. A specification can be enabling yet fail to disclose an applicant's contemplated best mode. . . . Indeed, most of the cases in which we have said that the best mode requirement was violated addressed situations where an inventor failed to disclose non-claimed elements that were nevertheless necessary to practice the best mode of carrying out the claimed invention.

*Chemcast*, 913 F.2d at 928 (emphases in original; internal citation omitted).

## III. THE '273 PATENT

### A. Evidence of a Best Mode

The '273 patent repeatedly states that the claimed invention is capable of updating the link information associating a particular word with its corresponding audio recording, thereby maintaining an accurate link even when the word is moved from its original position in the text to a new position. The first reference to this ability appears in the initial paragraph of the summary of the invention:

> It is an object of the present invention to provide an interface between the output of a speech recognition engine and an application capable of processing the output which operates in a data processing apparatus to link the relationship between the output data and the audio data to allow the audio data to be played back for any output data which has been dictated *even if the data as a whole has been processed in such a way as to move, reorder, delete, insert or format the data.*

(Ex. 1 ('273 patent)[2] at 19 Col. 1, lines 59-67 (emphasis added).)

In the section describing the preferred embodiment of the invention, the patent again notes this capability:

> Referring now to FIG. 7, this illustrates the word processing process of step S15 of FIG. 5 in more detail. In step S40, a user can position the cursor in the text on the display using the keyboard 2 or the pointing device 3. In step S41 the user can delete and/or insert text by, for example, typing using a keyboard or inserting text from elsewhere using conventional word processing techniques. In step S42 the speech recognition interface application 12 updates the links between the recognised [sic] words and associated audio components, *i.e.* the character number in the first field of the link data 25 is amended to indicate the correct character position of the word in the text. The word processing process is then terminated in step S43.

(*Id.* at 23 Col. 9, lines 9-25.) Yet another reference appears on the same page of the patent:

---

[2] Except where otherwise specified, citations to exhibits refer to the joint appendix to the parties' motions for summary judgment.

5

> Thus in the process described with reference to FIGS. 5 to 8, the user is able to harness the output of the speech recognition engine to maintain links between the words in the text and the corresponding audio components in the audio data even if the words are moved or are dispersed with non dictated text or text which has been dictated at some other time. Link data effectively acts as a pointer between the position of the text in the document and the position of the corresponding audio component in the audio data. In this way the dictated text can be ordered in any way and mixed with non dictated text without losing the ability to play back the audio components when selected by a user.

(*Id.* at 23 Col. 10, lines 52-63.) In addition, when the '273 patent application was filed, Plaintiff was already marketing a version of its commercial software product that included the ability to play back audio after manual edits had been made to the text. (*See* Ex. 19 (WordExpress version 1.32 manual), App. B, at 2 ("Typing into the document has now been implemented."); Ex. 13 (letter to IBM) at 2 (noting the March 1996 release date of version 1.32); Ex. 1 ('273 patent) at 1 (dated September 27, 1996).)

### B.   Plaintiff's Arguments Against the Best Mode Defense

Plaintiff first argues that the evidence set forth above does not conclusively establish that the Selrange macro is the single best mode contemplated by the patentees. Plaintiff cites the deposition testimony of Steven Corbett, one of the inventors of the '273 patent, who stated that, in the absence of the Selrange macro, "[i]t's possible [that the inventors] might have worked out another solution" to the manual editing problem. (Ex. 7 (Corbett Dep.) at 67.) Second, Plaintiff points to the supplemental declaration of Plaintiff's expert witness, Richard Sonnier, which appears to dispute the existence of *any* best mode and to contend that only intentional concealment violates the best mode requirement:

> I have found no evidence that the inventors of the '273 patent believed at the time of filing the patent application that there was a method of practicing the invention that was the best embodiment of the invention.

> Also, I have found no evidence that the inventors intentionally concealed any embodiment of the invention.

(Ex. 36 (Supplemental Decl. of Richard Sonnier) at 27.) Finally, Plaintiff argues that, even if the Selrange macro is found to be the best mode of practicing the invention, the '273 patent specification adequately describes that mode to persons skilled in the art.

### C. Analysis

The record evidence and the pertinent precedents defeat each of Plaintiff's arguments. As to the first point, as shown below, one of the inventors of the '273 patent has admitted that the development of the Selrange macro and the accompanying changes to the functionality of the word processing program was a signal achievement and surpassed any other method or form of the invention that was available. Thus, the use of the macro and related programs clearly constituted a "best mode," defeating Plaintiff's assertions – apparently made in the alternative – that (1) multiple best modes existed and (2) no best mode existed. As to the second point, a patentee's intention to conceal, or lack thereof, is irrelevant to the best mode analysis. *See United States Gypsum Co.*, 74 F.3d at 1215 ("A best mode violation may occur if the disclosure of the best mode is so objectively inadequate as to *effectively* conceal the best mode from the public.") (emphasis in original). As to the third point, the inventor conceded that language virtually identical to that contained in the '273 patent was "a very oversimplification [sic]" of the process necessary to implement the best mode.

The Federal Circuit has spoken clearly and succinctly to all of Plaintiff's contentions:

> While a disclosure necessary to meet a statutory requirement is to be understood from the standpoint of one skilled in the relevant art, a certain basic disclosure is needed of the best mode. *Cf. Genentech, Inc. v. Novo*

*Nordisk, A/S*, 108 F.3d 1361, 1366-67 (Fed. Cir. 1997) (stating that the knowledge of one skilled in the art may supplement a disclosure for purposes of satisfying the enablement requirement, but it is "not a substitute for a basic enabling disclosure"). Even an only mode must be disclosed, expressly or implicitly. Moreover, the fact that the use of software or a computer is not mentioned in the claims of the Robotic patent does not, contrary to Robotic's argument, exempt such use from the requirements of a best mode disclosure, since carrying out the invention usually involves more than what is expressly claimed.

*Robotic Vision Sys., Inc. v. View Engineering, Inc.*, 112 F.3d 1163, 1165-66 (Fed. Cir. 1997).

The *Robotic Vision* court held that the patent at issue in that case had adequately disclosed the best mode because "it would have been apparent to one skilled in the art, knowing that software was used in the prior art system, to use software for implementing the improved scanning method claimed in the patent." *Id.* at 1166. The court noted that it is usually the case that creation of specific source code is within the skill of the art and, therefore, that a description of the functions to be performed by a particular software product is sufficient to fulfill the best mode requirement. *Id.* A critical distinction to be made in this context is that between the *result* to be achieved by the software in question and the *functions* that the software must carry out to achieve that result. As contemplated by the *Robotic Vision* court, an adequate description of a software element must describe each specific task to be carried out by the software. The creation of the actual code to carry out the specified tasks may then be left to those skilled in the art.

Here, it is not seriously disputed that Plaintiff's method for maintaining adequate link data despite manual editing – the Selrange macro and accompanying changes to the functionality of the word processing program – was not easily accomplished:

> Q: Okay, and so it took the two of you, working at 90 percent at least of your capacity, probably a couple of months to solve the problem of how to

> update the links between the recognized words and the associated audio components, isn't that correct?
>
> Mr. Perque: Same objection.
>
> A: It may have done.
>
> Q: Well, what's your best estimate of how long it took?
>
> A: As I said, I would guess two or three months.
>
> Q: Okay, and this was a very difficult problem to solve, correct?
>
> Mr. Perque: Objection, asked and answered.
>
> A: Yes.

(Ex. 7 (Corbett Dep.) at 85-86; *see also id.* at 79 ("[I]t was quite a difficult problem to solve . . . ."); *id.* at 80 ("Q: In fact, it was a very difficult problem for you to solve, right? A: It was quite tricky, yes.").) Indeed, Mr. Corbett conceded that a description of the link maintenance procedure at the level of generality of that contained in the '273 patent was "a very oversimplification of what we needed to do." (*Id.* at 81.)

The inventors' solution of the manual-editing problem was not, in other words, tantamount to the mere creation of source code by a technician. Rather, it was a long-sought and laboriously researched best mode of achieving the patented invention. An adequate disclosure of this best mode would have described the actual functions carried out by the macro and the related features of WordExpress. No such disclosure appears in the '273 patent. The patent is, therefore, invalid.

## CONCLUSION

Because the '273 patent does not fulfill the "best mode" disclosure requirement of 35 U.S.C. § 112 ¶ 1, it is invalid and unenforceable. Defendant's motion for summary

judgment on Plaintiff's patent infringement claim is, therefore, **DISMISSED WITH PREJUDICE**. Plaintiff's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 21st day of February 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.